# United States District Court
### Eastern District of Washington

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DEC 0 5 2025

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

Allysa Marie Jacobson
_____

_____

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

Pullman Regional Hospital
_____

Dr. Huong A. Trinh
_____

_____

_____

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section I. Do not include addresses here.)*

Case No. **2:25-cv-00500-TOR**
_____
(To be filled out by Clerk's Office only)

# COMPLAINT

Jury Demand?
☑ Yes
☐ No

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

If this is an employment discrimination claim or social security claim, please use a different form.

**Plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.**

Page 1 of **8**

## I. PARTIES IN THIS COMPLAINT

**Plaintiff**

*List your name, address and telephone number. If you are presently in custody, include your identification number and the name and address of your current place of confinement. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.*

Plaintiff:    Jacobson Allysa M
              Name (Last, First, MI)

              1338 Sycamore St
              Street Address

              Asotin, clarkston       WA          99403
              County, City            State       Zip Code

              (208)997-8936
              Telephone Number

**Defendant(s)**

*List all defendants. You should state the full name of the defendants, even if that defendant is a government agency, an organization, a corporation, or an individual. Include the address where each defendant can be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.*

Defendant 1:   Pullman Regional Hospital
               Name (Last, First)

               835 SE Bishop Blvd
               Street Address

               Whitman Pullman        WA          99163
               County, City           State       Zip Code

Defendant 2:   trinh huong    c/o Pullman Regional Hospital
               Name (Last, First)

               835 SE Bishop Blvd
               Street Address

               Whitman Pullman        WA          99403
               County, City           State       Zip Code

Page **2** of **8**

**Defendant(s) Continued**

Defendant 3: _____

Name (Last, First)

_____

Street Address

_____

County, City          State          Zip Code


Defendant 4: _____

Name (Last, First)

_____

Street Address

_____

County, City          State          Zip Code

## II.  BASIS FOR JURISDICTION

*Check the option that best describes the basis for jurisdiction in your case:*

☐ **U.S. Government Defendant:** United States or a federal official or agency is a defendant.

☐ **Diversity of Citizenship:** A matter between individual or corporate citizens of different states and the amount in controversy exceeds $75,000.

☑ **Federal Question:** Claim arises under the Constitution, laws, or treaties of the United States.

If you chose "Federal Question", state which of your federal constitutional or federal statutory rights have been violated.

Emergency Medical Treatment and Labor Act (EMTALA) – 42 U.S.C. § 1395dd

_____

_____

_____

## III. VENUE

*This court can hear cases arising out of the Eastern District of Washington.*

*Under 28 U.S.C § 1391, this is the right court to file your lawsuit if: (1) All defendants live in this state AND at least one of the defendants lives in this district; OR (2) A substantial part of the events you are suing about happened in this district; OR (3) A substantial part of the property that you are suing about is located in this district; OR (4) You are suing the U.S. government or a federal agency or official in their official capacities and you live in this district. Explain why this district court is the proper location to file your lawsuit.*

Venue is appropriate in this Court because:

Venue is proper in the Eastern District of Washingtion because the events occured at Pullman Regional Hospital in Pullman, WA, and all defendants reside or work in this district

## IV. STATEMENT OF CLAIM

Place(s) of occurrence: Pullman Washington

Date(s) of occurrence: Sept 9th-oct 28

*State here briefly the FACTS that support your case. Describe how each defendant was personally involved in the alleged wrongful actions.*

**FACTS:**

What happened to you?

In early September 2025, I began experiencing severe abdominal cramping, pelvic pain, nausea, dizziness, and vaginal bleeding after taking misoprostol (abortion pill) on September 3 to treat a suspected miscarriage. After taking the medication, I continued to pass clots, had ongoing cramping, and did not improve. My symptoms worsened and became an emergency.

On September 9, 2025, I went to Pullman Regional Hospital Emergency Department because I was in severe pain, actively bleeding, and showing signs of an incomplete miscarriage with possible retained tissue. Pullman performed an ultrasound that showed a single live embryo with a critically low heart rate of 87 bpm, an irregular gestational sac, and a subchorionic hemorrhage, all indicating an unstable pregnancy and impending miscarriage requiring immediate medical treatment.

Despite these emergency findings, the on-call OB/GYN, Dr. Huong Trinh, refused to treat my miscarriage, refused to provide stabilizing care, and told the ER staff that no provider "would perform termination." Instead of giving me the legally required medical screening and emergency care, I was told to go elsewhere, including Planned Parenthood, even though I was in an emergency medical condition. This violated federal EMTALA requirements.

Pullman discharged me while still unstable. I was still bleeding, still in severe pain, and my vital signs showed tachycardia. They did not treat the miscarriage, remove the retained tissue, give antibiotics, prevent infection, or stabilize me. No follow-up plan was provided. I left the hospital still in an emergency condition.

Over the next several weeks, my condition worsened. I continued to experience severe pelvic pain, vaginal bleeding, fever symptoms, and increasing signs of infection. On October 22, 2025, an ultrasound from another provider already showed no fetal heart activity, confirming fetal demise.

On October 27, 2025, I had to return to Pullman Regional Hospital because the pain became unbearable and my symptoms had escalated. My vital signs again showed tachycardia, and my bloodwork showed elevated white blood cells and high neutrophils, consistent with infection. A repeat ultrasound confirmed a nonviable pregnancy, decreasing crown-rump length, an irregular gestational sac, and retained products of conception, including signs that the pregnancy sac was implanted low and possibly into my previous C-section scar.

I was diagnosed with incomplete miscarriage and possible septic abortion—a life-threatening condition caused by retained tissue and untreated infection. On October 28, 2025, I required emergency suction D&C surgery to remove the retained tissue and stop the progression of infection. The preoperative diagnosis included "possible septic abortion." I needed IV antibiotics and additional emergency care after surgery.

These serious complications occurred because Pullman Regional Hospital refused emergency care on September 9, failed to provide an appropriate medical screening, failed to stabilize my emergency condition, discharged me without treatment, and ignored clear signs of an impending miscarriage and infection. The refusal of care led to unnecessary suffering, worsening infection, an emergency surgical intervention, repeat hospital visits, trauma, and significant emotional and physical harm.

| Was anyone else involved? | Yes. Several Emergency Department personnel at Pullman Regional Hospital were involved in my intake, triage, and testing during my visit on September 9, 2025. ER nurses took my vital signs, documented my symptoms, recorded my bleeding and pain levels, and communicated with the on-call obstetrician. Radiology staff performed my ultrasound and confirmed that I had a critically low fetal heart rate, an irregular gestational sac, and a subchorionic hemorrhage. These staff members followed the decisions made by the hospital's on-call OB/GYN physician, Dr. Huong Trinh, who was responsible for determining the course of my emergency care. All stabilizing-treatment decisions, including the refusal to treat my miscarriage, refusal to provide evacuation or stabilization, and the decision to discharge me while unstable, were made by hospital leadership, emergency-department physicians, and the on-call OB/GYN. ER staff participated in providing information, but they were not the decision-makers who refused stabilizing treatment." |

"Pullman Regional Hospital, through its emergency department procedures and its decision-making personnel, failed to provide me with an appropriate medical screening examination and refused stabilizing treatment. The hospital's on-call OB/GYN, Dr. Huong Trinh, was notified of my condition and my ultrasound results, which showed an emergency medical condition. Despite this, Dr. Trinh instructed the ER staff that she would not provide miscarriage management or stabilization because, according to her, no local provider would 'perform termination.' This decision directly resulted in the refusal of stabilizing care. Emergency room physicians and staff followed this directive and discharged me despite my ongoing severe pain, persistent bleeding, unstable vital signs, and ultrasound evidence of an impending miscarriage. The hospital administration, emergency department physicians, and on-call physician collectively participated in the refusal to provide stabilizing care and in directing me to seek treatment elsewhere while I was still in an emergency condition. Radiology staff performed the ultrasound but had no authority to determine or provide stabilizing treatment. Nursing staff recorded my symptoms and vital signs, including tachycardia, but did not make treatment decisions. The decision to deny stabilizing treatment, deny miscarriage care, and discharge me while unstable was made by Pullman Regional Hospital's medical decision-makers and specifically by Dr. Huong Trinh in her capacity as the on-call obstetrician."

Who did what?

## V.  INJURIES

*If you sustained injuries related to the events alleged above, describe them here.*

I suffered significant physical, emotional, medical, and financial harm as a direct result of Pullman Regional Hospital's refusal to treat my emergency miscarriage and their failure to provide stabilizing care. Because they discharged me while I was still unstable, my condition worsened for weeks, causing avoidable pain, complications, and a medical emergency that could have been prevented with proper treatment.

Physical Injuries I Suffered

I experienced prolonged, severe pelvic and abdominal pain that lasted for weeks because the retained miscarriage tissue was never removed on September 9 like it should have been. I continued to have heavy and persistent vaginal bleeding, cramping, and clotting because I was discharged while still in the middle of an incomplete miscarriage.

Because Pullman refused to provide stabilizing treatment, I developed retained products of conception, which is dangerous and should have been treated immediately. This untreated tissue caused my condition to progress toward infection, which was shown later by my elevated white blood cell count, elevated neutrophils, pelvic tenderness, fever symptoms, and tachycardia on October 27.

My condition worsened to the point that I was diagnosed with a possible septic abortion, which is life-threatening. I had to undergo emergency suction D&C surgery on October 28, 2025 to remove the retained tissue, which would not have been necessary if Pullman had provided proper miscarriage care weeks earlier. I also required IV antibiotics because of the infection risk caused by their refusal to treat me.

I endured repeat emergency room visits, ongoing pain, bleeding, weakness, and complications that could have been completely avoided. My healing was delayed, and my body went through unnecessary trauma because no one treated the miscarriage when I first went to Pullman.

Emotional and Psychological Harm I Suffered

Emotionally, I experienced severe trauma from being refused emergency care when I was scared, in pain, and actively miscarrying. I was told to go elsewhere while I was unstable, bleeding, and needing help.

As my symptoms got worse with no medical support, I experienced intense fear, anxiety, and emotional distress. I constantly worried about infection, hemorrhage, and whether I was safe. The weeks of prolonged bleeding, pain, and not knowing what was happening to my body caused deep psychological harm.

I now struggle with loss of trust in medical providers, because when I asked for help in an emergency, I was denied care. I have developed anxiety around seeking medical attention, and the experience of needing emergency surgery after suffering for so long has left me with long-lasting emotional trauma.

Medical Harm I Suffered

My condition went from a treatable miscarriage to a serious medical emergency because I was refused care. I suffered a worsening infection, and my condition progressed from an incomplete miscarriage to signs of sepsis, which can be fatal.

I now face an increased risk of fertility complications in the future because of how long the miscarriage was left untreated. I also face a higher risk of complications in future pregnancies, including hemorrhage, miscarriage, or abnormal implantation.

The delay in medical care forced me to undergo a more invasive surgical procedure (D&C) instead of early miscarriage management, which caused additional physical trauma and recovery time.

Financial Harm I Suffered

Even though I could not afford all the medical bills, I still suffered financial harm due to the unnecessary complications caused by the malpractice.

I incurred expenses from:
multiple emergency room visits
emergency surgery
lab tests and imaging
medications and antibiotics
follow-up caretravel between hospitals because I was refused treatment

I also suffered financially because my trauma and medical condition made it difficult to return to normal daily functioning.

☐ Overall Harm I Suffered

Pullman Regional Hospital's refusal to treat my emergency miscarriage on September 9 caused:

a preventable medical emergency

a preventable infection

a preventable emergency surgery

weeks of excruciating pain and suffering

avoidable emotional trauma

delayed healing and long-term anxiety

increased future medical risks

All of this happened because the hospital refused to stabilize me, refused miscarriage treatment, ignored emergency symptoms, and discharged me while I was still unstable, in pain, and at risk of infection.



## VII. CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

11/27/2025
Dated

*allysa marie jacobson* (Verified by pdfFiller 11/27/2025)
Plaintiff's Signature

Jacobson, Allysa Marie
Printed Name (Last, First, MI)

1338 Sycamore st clarkston WA 99403
Address                City            State        Zip Code

(208)997-8936
Telephone Number

*List the same information for any additional plaintiffs named. Attach additional sheets of paper as necessary.*